UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JUSTIN ADCOCK, as Personal Representative for the Estate of COREY JAMES ADCOCK, deceased and on Behalf of his children CADEN J. ADCOCK, and E.A., a minor by and through her mother JENNIFER MARTINEZ ADCOCK,<br><br>          Plaintiffs,<br><br>v.<br><br>SKYHAWK AVIATION, a Minnesota corporation; BRADLEY A. LEVAN, a Citizen of Minnesota in his Individual capacity as owner and operator of SKYHAWK AVIATION and as Registered Agent with a listed address of 205 3rd Ave, SE Plainview, MN 55964 ROBINSON HELICOPTER COMPANY, INC., a California corporation; AGRIDATA, INC., a North Dakota corporation; CHS, INC., a Minnesota corporation,<br><br>          Defendants. | Case No. 23-cv-02155 (KMM/JFD)<br><br><br><br><br><br><br>**ORDER** |

Pending before the Court is Defendant Robinson Helicopter Company's Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2). ECF No. 87. For the reasons set forth below, the Court **GRANTS** the motion. The pending case against Robinson Helicopter Company is to be **TRANSFERRED** to the United States District Court for the Central District of California.

## PARTIES

Before he passed away in the helicopter crash that precipitated this litigation, Corey James Adcock was a resident of Victoria County, Texas. Amend. Compl., ECF No. 7 ¶ 4. On behalf of Corey's adult and minor children, the Plaintiff, Justin Adcock, was named Personal Representative by the Victoria County Probate Court. Amend. Compl. ¶ 3. Justin Adcock filed this suit on behalf of Corey James Adcock's heirs for the benefit of all persons entitled to compensation for his death. *Id.*

Defendant, Robinson Helicopter Company, Inc. ("Robinson"), is a California corporation with its principal place of business in Torrance, California. *Id.* ¶ 6. Among other things, Robinson designed, produced, tested, inspected, trained pilots to fly its helicopters, and marketed, warranted, and sold the R44 II helicopter involved in the crash that took Corey Adcock's life. *Id.* ¶ 9. Robinson also published advisories, warnings, after-market guidance, and ongoing airworthiness advice and directions. *Id.*

The remaining Defendants are citizens of Minnesota and North Dakota, and are not at issue in the current motion. Defendant, Skyhawk Aviation ("Skyhawk") is a business entity incorporated in the State of Minnesota. *Id.* ¶ 5. Its principal place of business is located in Plainview, Minnesota. *Id.* Skyhawk is owned and operated by Bradley A. Levan, who is and was a Minnesota resident and citizen at all pertinent times. *Id.* Defendant AgriData, Inc. ("AgriData"), is a North Dakota corporation with its principal place of business in Grand Forks, North Dakota. *Id.* ¶ 7. Defendant CHS Inc. ("CHS"), is incorporated in the State of Minnesota, and its principal place of business is in Inver Grove Heights, Minnesota. *Id.* ¶ 8.

## BACKGROUND

On July 19, 2021, a Robinson R44 II (hereafter "N44BJ" or the "accident helicopter") had a technical breakdown and crashed while in flight near Elgin, Minnesota. *Id.* ¶ 1. The only person in the helicopter, Corey James Adcock, was killed in the accident. *Id.* ¶ 2. He leaves behind his brother, Justin Adcock, and his children, Caden J. Adcock, and E.A., a minor by and through her mother, Jennifer Martinez Adcock. *Id.*

Robinson sold the accident helicopter to Leading Edge Aviation, Inc., a dealership in Oregon, in June 2007. Riedl Aff., ¶ 12. On December 13, 2016, Todd LeVan of LeVan Aviation purchased the aircraft. *Id.* ¶ 21. Prior to the crash, the accident helicopter was transferred to Skyhawk and Bradley A. LeVan. Bradley LeVan and Skyhawk, along with CHS, were in charge of operating, contracting, leasing, and otherwise maintaining the aircraft. *Id.* Corey Adcock was operating the helicopter for crop dusting on July 19, 2021. *Id.* ¶ 23. During a flight near Elgin, he encountered a fuel delivery and ignition system failure that resulted in the engine failing, losing altitude, and colliding with a powerline before crashing.

In Count I of the Amended Complaint, the Plaintiffs allege negligence against Defendants Skyhawk, Bradley A. Levan, CHS, and Robinson. In Count II, the Plaintiffs allege negligence against Defendants Skyhawk, Bradley A. Levan, CHS, and AgriData. In Count III, the Plaintiffs allege wrongful death against all Defendants. In Count IV, the Plaintiffs allege strict products liability against Robinson. And in Count V,[1] Plaintiffs

---

[1] Plaintiffs mistakenly list the strict products liability and breach-of-warranties claims as Count IV in the Amended Complaint.

3

allege breach of warranties against Defendants Skyhawk, Bradley A. Levan, CHS, and Robinson.

On January 22, 2024, this Court held a hearing on Robinson's first Motion to Dismiss for Lack of Personal Jurisdiction. ECF No. 69. Following the hearing, the Court denied Robinson's motion without prejudice to allow Plaintiffs to engage in jurisdictional discovery. *Id.* On October 3, 2024, Robinson renewed its motion to dismiss the Amended Complaint for lack of jurisdiction. ECF No. 87. In its renewed motion, Robinson asserts that jurisdictional discovery revealed no facts that would support a finding of the requisite minimum contacts or purposeful availment by Robinson with the State of Minnesota to permit personal jurisdiction over Robinson in this forum. The Court has considered the record in full and agrees.

## DISCUSSION

**I.      Legal Standards**

In a diversity case like this, the court follows state law to determine the issue of personal jurisdiction, looking to the forum state's long-arm statute. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Because Minnesota's long-arm statute extends jurisdiction to the fullest extent allowed by the Constitution, courts in the District of Minnesota must determine whether their exercise of personal jurisdiction over a defendant is consistent with federal due process. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995). To be consistent with due process, a defendant must have minimum contacts with the forum so that exercising jurisdiction will not "offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

4

286, 291–92 (1980) (internal quotations omitted). A defendant's contacts with a forum are sufficient when the defendant "should reasonably anticipate being haled into court there." *Id.* at 297; *see also Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022). In conducting that analysis, the Court must determine whether Defendants have sufficient minimum contacts and whether the Plaintiffs' claims "arise out of or relate to" Defendants' contacts. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017)).

The Court considers five factors in the minimum-contacts analysis. *Bros. & Sisters in Christ*, 42 F.4th at 952; *Johnson v. Arden,* 614 F.3d 785, 794 (8th Cir. 2010). The three "primary factors" include "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; [and] (3) the relationship of the cause of action to the contacts[.]"[2] *Arden*, 614 F.3d at 794. These factors are "closely interrelated" and often considered together. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996). The "secondary factors" are "(4) the interest of [Minnesota] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Arden*, 614 F.3d at 794.

"A defendant purposefully avails itself of the forum state when it takes action to 'target' that specific state." *Macias v. LG Chem Ltd.*, No. SA CV 20-02416-DOC-ADSx,

---

[2] The Eighth Circuit has noted that the third factor "distinguishes whether the jurisdiction is specific or general." *Arden*, 614 F.3d at 794. No party here contends that Minnesota has general jurisdiction over Robinson, so the Court considers specific jurisdiction alone, and the third factor is important.

5

2021 WL 780478, at *4 (C.D. Cal. Feb. 28, 2021) (quoting *Rodoni v. Royal Outdoor Prod., Inc.*, No. CV 19-17-M-DLC, 2019 WL 2300400, at *5 (D. Mont. May 30, 2019)). The defendant's contact with the forum must not be "sporadic, random, attenuated, or fortuitous." *Cortec Corp. v. Corpac GmbH & Co. KG*, 22-CV-476 (KMM/ECW), 2023 WL 171791, at *6 (D. Minn. Jan. 12, 2023) (quoting *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015)) (internal quotations omitted). For example, in *Ford*, the Court considered whether specific personal jurisdiction over Ford Motor Company could be exercised in Montana and Minnesota, despite the fact that the vehicles at issue were not manufactured, sold, or distributed in those states. 592 U.S. at 355–57. There, Ford acknowledged that it was taking advantage of the forum states by promoting its cars "[b]y every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail"—to people in Minnesota and Montana. *Id.* at 365. Additionally, the Court observed that Ford had 84 dealerships in Minnesota and 36 in Montana, demonstrating the company's systematic attempts to cater to the markets in the forum states for the disputed automobiles. *Id.*

On a motion to dismiss for lack of personal jurisdiction, the "plaintiffs bear the burden of establishing a prima facie showing of jurisdiction, and we view the facts in the light most favorable to the plaintiffs." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (quoting *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020)) (brackets omitted). This prima facie showing "is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendants can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (quoting *Dever v.*

6

*Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). "The evidentiary showing required at [this] stage is minimal." *Arden*, 614 F.3d at 794 (quoting *Willnerd v. Firt Nat'l Neb., Inc.*, 558 F.3d 770, 778 (8th Cir. 2009)). This showing is "'tested, not by the pleadings alone, but [also] by the affidavits and exhibits' supporting or opposing the motion" to dismiss. *K-V Pharm.*, 648 F.3d at 592 (quoting *Dever*, 380 F.3d at 1072).

A plaintiff opposing a motion to dismiss on grounds of specific jurisdiction has the burden of demonstrating purposeful availment. *Dever*, 380 F.3d at 1072 (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)). In determining whether the Plaintiffs have fulfilled their burden in this case, the Court considers each of the grounds they have claimed for specific jurisdiction.

**II.    Analysis**

Robinson argues that the Plaintiffs have failed to meet their burden to show that the Court has personal jurisdiction over it because there is no indication that Robinson purposefully availed itself of the Minnesota forum in any way. Plaintiffs argue that they have shown Robinson has the required minimum contacts within Minnesota because Robinson: (i) directly and indirectly targeted Minnesota through its use of dealers, service centers, and parts distributors in Minnesota; (ii) authorizes and certifies Robinson Service Centers, which are advertised as specialists in maintaining Robinson helicopters; (iii) has three authorized service centers in the State of Minnesota; (iv) has an authorized parts distributor in Minnesota; and (v) service centers own and operate Robinson helicopters in Minnesota as flight trainers, tour operators, spray operations, and personal transport. Pls' Resp. 3–4, ECF No. 93.

### A. Evidentiary Record

Because the pending motion challenges personal jurisdiction, the parties have relied on evidence outside of the pleadings. Plaintiffs have offered extensive exhibits to support their showing that exercise of personal jurisdiction over Robinson would be appropriate, and Robinson has submitted its own declarations.

Plaintiffs offered copies of the web page of a Robinson-authorized service center in Minnesota, Prairie Air, Inc. ("Prairie"), to illustrate that several flight schools and helicopter tour companies use Robinson helicopters. Pl.'s Resp., Ex. A, Prairie Air Inc., ECF No. 93-2; *id.*, Ex. B, ECF No. 93-3; *id.*, Ex. C, ECF No. 93-4. Plaintiffs point to the Robinson logo displayed on Prairie's website and language on Prairie's website stating that it "is an authorized Robinson Helicopter Company Parts Distributor" that "house[s] an extensive inventory of Robinson parts to meet the needs of customers located worldwide." *Id.*, Ex. A at 1. Plaintiffs also point to language on Prairie's website asserting that "it is a Leading Service Provider for Robinson Helicopters," *id.*, Ex. C at 1, and that it "is an authorized Robinson Helicopter Company Service Center, with expertly trained and certified technicians," *id.*, Ex. B at 1.

Plaintiffs similarly point to the web pages of two more Robinson certified service centers: Quality Aviation, Inc. and Lake Superior Helicopters LLC, which also use Robinson helicopters, including the R-44, offer tours, and have helicopter flight schools. *Id.*, Ex. D, Lake Superior Helicopter, ECF No. 93-5; *id.*, Ex. E, Quality Aviation, Inc., ECF No. 93-6.

The three service centers are listed on the U.S. Dealer & Service Center Directory section of the Robinson website, and the Plaintiffs submitted a copy of the directory. *Id.*, Ex. F, ECF No. 93-7. Plaintiffs also provided a copy of Robinson's company information web page, dated November 7, 2023. *Id.*, Ex. G, ECF No. 93-8. Plaintiffs submitted a copy of inventory at the three service centers and contracts between Robinson and the service centers listed as "RHC000001–124" that were produced by Robinson on July 26, 2024. *Id.*, Ex. G, ECF No. 93-8. Lastly, Plaintiffs offer the transcript of Joe LaRue's August 21, 2024 deposition. *Id.*, Ex. I, LaRue Dep., ECF No. 93-9; *id.*, Ex. J, Motion Hr'g Tr, ECF No. 93-10. Mr. LaRue is the Vice President of Prairie Air.

Robinson also submitted evidence for the Court's consideration, including a copy of Robinson's July 26, 2024 responses to Plaintiffs' Jurisdictional Interrogatories. Goetz Aff., Ex. A at 4–9, ECF No. 90-1. Robinson provided excerpts of Mr. LaRue's August 21, 2024 deposition, *id.*, Ex. B at 12–26, and the August 1, 2024 deposition of Peter Riedl, Robinson's vice president and representative, *id.*, Ex. C at 27–32. Finally, Robinson provided two decisions relevant to its motion to dismiss for lack of personal jurisdiction: (1) an order issued in *Hicks v. Robinson Helicopter Company, Inc.*, Case No. 1:24-cv-00004-MW/MJF, Doc. 42 (N.D. Fla. May 3, 2024), *id.*, Ex. D at 33–47; and (2) a copy of an order dated September 8, 2021 in a case out of the Fourth Judicial District of Iowa, which granted Robinson's motion to dismiss for lack of personal jurisdiction, *id.*, Ex. E at 48–58.

### B. Contacts with the Forum

We first examine the contacts between Robinson and Minnesota. The Court finds they are simply not enough to support personal jurisdiction. Most of Plaintiffs' allegations pertain to Robinson's dealings with the third-party service centers, as opposed to Robinson's contacts with Minnesota specifically. For starters, the Plaintiffs allege that Robinson sold its products and services to Minnesota customers, Pls.' Resp. at 3, and that Robinson directly and indirectly targeted the forum through its use of service centers and parts distributors. The Plaintiffs highlight Robinson's relationships with the service centers. Unfortunately for the Plaintiffs, prior contracts between a defendant and Minnesota residents do not support purposeful availment on their own. *See Dr. Performance of Minn., Inc. v. Dr. Performance Mgmt., L.L.C.*, Civ. No. 01–1524, 2002 WL 31628440, at *5 (D. Minn. Nov. 12, 2002) ("[T]he existence of a contract between citizens of different states has also been held an insufficient basis for personal jurisdiction.") (citing *Iowa Elec. Light and Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979)); *Iowa Elec. Light and Power Co.*, 603 F.2d at 1303 ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a defendant and the forum state."); *Yellow Brick Rd., LLC v. Childs*, 36 F. Supp. 3d 855, 871 (D. Minn. 2014) ("[A]n individual's contract with an out-of-state party cannot alone automatically establish sufficient minimum contacts in the other party's home forum to permit exercise of jurisdiction in that forum.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985)) (cleaned up).

Nothing about the contracts between Robinson and the three service centers in Minnesota removes this case from the general rule that contracts alone are not enough. The Terms of Sale section of the 2023 Robinson Service Center Agreement states that:

> The relationship created by this agreement between [Robinson] and the service center does not permit the service center to act as an agent for [Robinson]. The service center is not granted any express or implied right to assume any obligation in the name of [Robinson].

Agreement, Pl.'s Resp., Ex. H at 35. None of the service centers has a right to negotiate on behalf of Robinson. LaRue Dep. at 32. Robinson has no ownership or financial interest in the independently owned and operated third-party service centers and can make no business decisions on behalf of the service centers. *Id.* at 14, 32–33, 35.

Additionally, while Plaintiffs note that Robinson has three authorized service centers in the State of Minnesota, there are over 150 third-party service centers that service Robinson's helicopters throughout the United States. And the Minnesota service centers reached out to Robinson to establish a contractual relationship; Robinson did not approach them or ask them to be a service center. *Id.* at 32. There is no evidence that Robinson owns, controls, or has any kind of economic relationship whatsoever with third-party aviation service centers located in Minnesota.

Plaintiffs attempt to provide a more specific connection between Robinson and Minnesota by emphasizing the closer relationship between Robinson and Prairie. Specifically, the Plaintiffs highlight Prairie's status as an "authorized" Robinson parts distributor. But this allegation fails to establish jurisdiction for a few reasons. Prairie was operating for about ten years before it became a Robinson service center. LaRue Dep. at

11

34. It also works on a wide variety of aircraft other than Robinson helicopters. LaRue Dep. at 26–27. Nothing about its distribution of Robinson parts changes its status as an independent business, or creates sufficient purposeful availment.

Other courts have reached the same decision about Robinson in other jurisdictions. A similar attempt to prove Robinson had sufficient contacts was made in *Hicks v. Robinson Helicopter Company Inc.*, Case No. 1:24-cv-00004-MW/MJF, Doc. 42 (N.D. Fla. May 3, 2024), a diversity matter arising out of a fatal helicopter accident in Florida. There, the plaintiff also argued that the presence of Robinson's authorized service centers and dealers in Florida established sufficient contacts for the court to exercise personal jurisdiction over Robinson. Specifically, the plaintiff argued that Robinson purposefully availed itself of the Florida market by establishing a network of authorized service centers and dealers within the state, and that such a network demonstrated Robinson's deliberate engagement in the Florida market—making it reasonable for the company to anticipate being haled into court there. But while Robinson manufactured the helicopter involved in the Florida accident, it was first purchased in Virginia prior to being flown into the state—through no action of Robinson. *Id.* at 9–10. The *Hicks* court further found that the existence of fifteen authorized dealers or service centers in Florida was insufficient to demonstrate that the plaintiff's claims arose from or related to Robinson's contacts with Florida. *Id.* at 10. And the court found that the independent conduct of another party—purchasing the helicopter out of state and flying it into the forum—was "not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of

12

jurisdiction." *Id.* at 9–10 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

Additionally, the Plaintiffs in this case raised identical jurisdictional arguments against Robinson in relation to the same helicopter accident in an Iowa state court case. Goetz Aff., Ex. E, *Adcock v. Cedar Ridge Aviation, LLC*, No. LACV030766 (Iowa Dist. Ct. Sept. 8, 2021). There, the court stated that "[t]he focus, for jurisdictional purposes, rests on the defendant's connection with the *litigation* in the forum state, not the defendant's connection with *residents* in that state." *Id.* at 8 (quoting *In re Marriage of Crew*, 549 N.W.2d 527, 530 (Iowa 1996) (citations omitted)). The court found that Robinson had no dealerships, offices, or bank accounts, and did not directly market or sell products in Iowa. *Id.* Furthermore, the court found that Plaintiffs failed to show that the cause of action arose from Robinson's actions within Iowa and that Robinson's connection to the litigation was sufficient to subject it to specific jurisdiction. *Id.* at 9.

The Supreme Court's analysis in *Bristol-Myers Squibb* is also instructive. There, the plaintiff argued that because Bristol-Myers, incorporated in Delaware and headquartered in New York, contracted with a California-based company to distribute a drug, it had sufficient contacts in California to give rise to personal jurisdiction. 582 U.S. at 267. But as the Supreme Court held, "a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 265 (quoting *Walden*, 571 U.S. at 286) (ellipses omitted).

Against this legal landscape, the Court finds that the Plaintiffs here have failed to establish anything more than a third-party relationship between Robinson and the three

13

service centers. Robinson possesses no dealerships, offices, or bank accounts and does not directly market or sell products in Minnesota. Robinson's alleged contacts in Minnesota are insufficient to subject it to personal jurisdiction in this forum because Plaintiffs fail to demonstrate that Robinson purposefully availed itself of the privilege of doing business in the forum. *See Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1135 (8th Cir. 2015) (upholding a district court's finding that it lacked personal jurisdiction where a foreign corporate parent company did not have any contacts with the state, never sent employees to the state, and "no money was received or sent to the state"). And Plaintiffs have failed to provide jurisdictional evidence satisfying their burden of demonstrating that Robinson had sufficient minimum contacts in Minnesota.

### C. Relationship of Claims to Forum-Related Activities

The Plaintiffs' showing breaks down in other parts of the analysis as well. The third prong of the test requires a plaintiff's claims to "'arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co.*, 592 U.S. at 359 (quoting *Bristol-Myers*, 582 U.S. at 262). This factor weighs against personal jurisdiction over Robinson in Minnesota.

Again, *Ford* is particularly instructive. There, the Court pointed out that the lawsuit was tied to Ford's contacts with the forums and warranted jurisdiction because "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.* at 365. Ford had dealerships that performed maintenance on the vehicles at issue and marketed those vehicles in the forum states. The Court stated that such a connection creates "a strong

'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Ford Motor Co.*, 592 U.S. at 365.

Robinson's situation is markedly different. Here, the Plaintiffs do not allege that *any* of the three service centers worked on the subject aircraft. None are shown to have sold parts for or serviced the helicopter at issue. LaRue Dep. at 23. Finally, while the accident helicopter was located in Minnesota at the time of the accident, it was in the forum due to the actions of third parties that have no ties to Robinson.

Even if the Plaintiffs had established stronger minimum contacts through the service centers, they have not established that Corey Adcock's death arose out of or was related in any way to Robinson's contacts with Minnesota, as required to invoke specific jurisdiction. While Robinson was the original manufacturer of the accident helicopter, the aircraft was designed and manufactured in California, before it was sold to an Oregon-based dealership, Leading Edge Aviation, Inc., in June of 2007. *See VCode Holdings, Inc. v. Adidas Am., Inc.*, No. 04-cv-4583 (JMR/FLN), 2005 WL 8164945, at *4 (D. Minn. Sept. 7, 2005) ("Plaintiffs have failed to demonstrate that [Defendant] intentionally placed its products in a stream of commerce directed at Minnesota with the expectation that they would be purchased by Minnesota consumers."), *report and recommendation adopted,* 04-CV-4583 (JMR/FLN), 2005 WL 8164947 (D. Minn. Oct. 28, 2005). It is well-established that, absent something more, a defendant does not become subject to personal jurisdiction merely because he places products into the stream of commerce that find their way into the forum. *Dever*, 380 F.3d at 1075. "[S]omething more [is required] than that the defendant was aware of its product's entry into the forum State through the stream of commerce in order

15

for the State to exert jurisdiction over the defendant." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 111 (1987).

In sum, Robinson's alleged contacts with the forum are inadequate to subject it to jurisdiction in Minnesota.[3] The Plaintiffs fail to meet their burden, even after conducting substantial jurisdictional discovery.

### III.   Transfer to the Central District of California

The Plaintiffs request that, if the Court determines that personal jurisdiction over Robinson here is improper, the Court transfer the matter to the United States District Court for the Central District of California. The Court agrees that this is appropriate.

"In a multiple defendant case where a court does not have personal jurisdiction over [one] of the defendants, a court may sever the claims against [that] defendant[], transfer the claims to a different federal district where they could originally have been brought, and then proceed with the remaining claims over which it does have jurisdiction." *Level 3 Commc'ns, LLC v. Ill. Bell Tel. Co.*, 4:13-CV-1080 CEJ, 2014 WL 1347531, at *1 (E.D. Mo. Apr. 4, 2014) (citing *St. Paul Fire & Marine Ins. Co. v. Servidone Constr. Corp.*, 778 F. Supp. 1496, 1508 (D. Minn. 1991); Fed. R. Civ. P. 21 ("On motion or on its own, the

---

[3] The remaining two factors do not weigh in favor of jurisdiction. *See Westley v. Mann*, 896 F. Supp. 2d 775, 792 (D. Minn. 2012) ("[W]hile in some circumstances, 'Minnesota has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents,' . . . Minnesota has little interest in providing its citizens a forum for a dispute that has no connection to the state.") (quoting *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1389 (8th Cir. 1995)). And as neither the Plaintiffs nor Robinson are located in or near Minnesota, convenience also weighs against jurisdiction here.

court may at any time, on just terms, add or drop a party. The Court may also sever any claim against a party.")).

Here, the refiling of the Plaintiffs' claims against Robinson in a different jurisdiction could prevent their claims from being adjudicated on their merits if the court finds that the Plaintiffs' claims are time-barred under the statute of limitations. *Level 3 Communications, LLC*, 2014 WL 1347531, at *1. Since Robinson is a business entity incorporated in California, with a principal place of business in Torrance, California, the Central District of California is a proper forum. Furthermore, Robinson does not dispute that it is subject to jurisdiction in California. As such, in the interest of justice, the Plaintiffs' claims against Robinson are transferred to the U.S. District Court for the Central District of California because the possibility exists that dismissal would present statute of limitation-related issues. *Id.* (citing *Cardinal v. Walker,* 2013 U.S. Dist. LEXIS 18031, at *8–9 (D. Minn. Jan. 11, 2013) ("[A] court must consider whether dismissal of the action will affect the plaintiff's vulnerability to a statute of limitations defense."); *Hempstead Cnty. & Nev. Cnty. Project v. EPA,* 700 F.2d 459, 462–63 (8th Cir. 1983) (action was transferred because statute of limitations would have precluded refiling in another court)).

Based on the foregoing, and in the interest of justice, the Motion to Transfer is **GRANTED**.

   **IT IS HEREBY ORDERED** that:

   1. Defendant Robinson Helicopter Company's Motion to Dismiss for Lack of Jurisdiction [ECF No. 87] is **GRANTED**.

   2. The Plaintiffs' Motion to Transfer is **GRANTED**.

3. The Clerk of Court is directed to transfer this action, as it relates to Defendant Robinson Helicopter Company, to the United States District Court for the Central District of California.

Date: May 28, 2025                    *s/Katherine Menendez*
                                      Katherine Menendez
                                      United States District Court